1

2

3

4                          UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7    THE COOKIE DEPARTMENT, INC.,              Case No.  20-cv-09324-KAW

8              Plaintiff,

9         v.                                   **ORDER RE DISCOVERY LETTER
                                               NOS. 1-7**
10   THE HERSHEY COMPANY, et al.,              Re: Dkt. Nos. 64-66, 74-77, 81

11             Defendants.

12

13        On December 23, 2020, Plaintiff The Cookie Department, Inc. filed the instant case against

14   Defendants The Hershey Company and One Brands, LLC, alleging that Defendants infringed on

15   Plaintiff's "Tough Cookie" mark when Defendants used the mark "Tough Cookies Only" on its

16   packaging and advertising material.  (Compl. ¶ 1, Dkt. No. 1.)  Between May 6 and 18, 2022, the

17   parties filed seven discovery letters.  On June 2, 2022, the parties filed supplemental materials

18   requested by the Court.  (Dkt. Nos. 80, 81.)  The Court deems these matters suitable for

19   disposition without a hearing pursuant to Civil Local Rule 7-1(b), and rules as follows.

20        **A.    Discovery Letter No. 1: Deposition of Kara Zioba**

21        In the first discovery letter, Plaintiff seeks to compel the deposition of Kara Zioba.

22   (Discovery Letter No. 1, Dkt. No. 74.)  Ms. Zioba has been Defendant Hershey's Global

23   Intellectual Property manager as of March 2021; prior to that, Ms. Zioba was a Trademark

24   Paralegal (March 2016 through March 2019) and a Senior Paralegal for Intellectual Property

25   (March 2019 through March 2021).  (*Id.* at 1, 3.)  Plaintiff asserts that Ms. Zioba was the first

26   person at Defendant Hershey to learn of Plaintiff's "Tough Cookie" trademark application on

27   January 16, 2020, was consulted by Defendant One Brands' employee, Jannelle Knaus, regarding

28   the use of the "Tough Cookies Only" product line, and ran a trademark seminar after the instant

United States District Court
Northern District of California

1    lawsuit was filed.[1]  (*Id.* at 1.)  Defendants respond that Plaintiff was performing privileged legal

2    work at the direction of Defendant Hershey's attorneys.  (*Id.* at 4.)

3          "It has long been held that the [attorney-client] privilege applies only to members of the

4    bar of a court or their subordinates," and that "[e]xamples of such protected subordinates would

5    include any law student, paralegal, investigator or other person acting as the agent of a duly

6    qualified attorney under circumstances that would otherwise be sufficient to invoke the privilege."

7    *Dabney v. Inv. Corp. of Am.*, 82 F.R.D. 464, 465 (E.D. Pa. 1979).  While "[t]he Ninth Circuit has

8    not adopted a standard governing when the deposition of opposing counsel may go forward[,

9    m]any district courts in this circuit have adopted the Eighth Circuit test from *Shelton v. Am.*

10   *Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986)."  *LionHead Global No 2 LLC v. Todd Reed, Inc.*,

11   No. 2:19-cv-07903-JWH-AFM, 2020 U.S. Dist. LEXIS 259030, at *5 (C.D. Cal. Dec. 14, 2020).

12   Per *Shelton*, a party seeking to depose opposing counsel must show that: "(1) no other means exist

13   to obtain the information than to depose opposing counsel; (2) the information sought is relevant

14   and nonprivileged; and (3) the information is crucial to the preparation of the case."  805 F.2d at

15   1327.

16         As an initial matter, the parties dispute whether the *Shelton* test applies.  In *Pamida, Inc. v.*

17   *E.S. Originals, Inc.*, the Eighth Circuit explained that "[t]he *Shelton* test was intend[ed] to protect

18   against the ills of deposing opposing counsel in a pending case which could potentially lead to the

19   disclosure of the attorney's litigation strategy."  281 F.3d 726, 730 (8th Cir. 2002) (finding that the

20   *Shelton* test did not apply to a deposition regarding a concluded case).  Thus, Plaintiff argues that

21   "the *Shelton* test is not automatically applicable or controlling in instances involving paralegals

22   who are not the trial or litigation counsel of record."  (Discovery Letter No. 1 at 1.)  Defendants

23   respond -- and Plaintiff does not dispute -- that Ms. Zioba is a member of the litigation team for

24   this case, including having attended almost all of the depositions and participated in mediation.

25   (*Id.* at 4.)  Thus, a deposition of Ms. Zioba does go to the concerns of the Eighth Circuit,

26

27   _____

28   [1] The parties dispute whether this occurred in 2021 or 2022; per the relevant deposition testimony, the seminar occurred "a couple months" before the deponent's April 1, 2022 deposition. (Discovery Letter No. 1 at 1, 5 n.5, Exh. 3 ("Lowry Dep." at 52:10-13).)

United States District Court
Northern District of California

1   specifically the potential risk of disclosure of opposing counsel's litigation strategy.

2           Next, the parties dispute whether the information sought is relevant and privileged.  (*See*

3   Discovery Letter No. 1 at 2, 4.)  The Court finds that it is.  With respect to Ms. Zioba learning of

4   the "Tough Cookie" trademark application, the Court has reviewed Defendants' *in camera*

5   submission and is satisfied that this occurred while Ms. Zioba was performing privileged legal

6   work at the direction of Defendant Hershey's attorney.  This information is privileged.  As to

7   Plaintiff's assertion that Ms. Knaus "consult[ed] directly with Ms. Zioba" regarding the use of the

8   "Tough Cookies Only" tagline, the Court has reviewed Defendants' *in camera* submission and is

9   again satisfied that Ms. Zioba was not providing independent legal advice, but was relaying

10  communications for legal advice to Defendant Hershey's attorneys.  Thus, such information is also

11  privileged.  *Contrast with HPD Labs., Inc. v. Clorox Co.*, 202 F.R.D. 410, 415 (D.N.J. 2001)

12  (finding that a paralegal's advice was not privileged where the paralegal provided her own views

13  and opinions, rather than relaying questions to her supervisors to obtain legal advice).

14          As to the 2021 or 2022 trademark seminar that Ms. Zioba led, the Court finds that Plaintiff

15  has failed to explain how this information is crucial to the preparation of the case.  Plaintiff argues

16  that the seminar occurred after the awareness of the "Tough Cookies Only" trademark application,

17  was first of its kind, and was run by Ms. Zioba.  (Discovery Letter No. 1 at 3.)  Defendants

18  respond -- and, again, Plaintiff does not dispute -- that the training did not discuss or reference

19  Plaintiff.  (*Id.* at 5; *see also* Lowry Dep. at 55:19-25.)  It is unclear how a general training about

20  trademarks is relevant, let alone crucial to the preparation of the case.  Moreover, even if was

21  crucial, Plaintiff fails to demonstrate that "no other means exist to obtain the information than to

22  depose opposing counsel," given that Plaintiff could (and, in fact, did) depose attendees of the

23  training.  *Id.*; *see also* Lowry Dep. at 49:22-57:14.)

24          Accordingly, the Court DENIES Plaintiff's request to compel Ms. Zioba's deposition.

25      **B.      Discovery Letter No. 2: Privilege Log**

26          The parties' second discovery letter concerns three categories of documents on

27  Defendants' privilege log.  (Discovery Letter No. 2, Dkt. No. 66.)

28  ///

3

1

### i.    Trademark Searches

Plaintiff seeks documents on the grounds that they may be trademark search reports. (Discovery Letter No. 2 at 3.)  "[T]rademark search reports are not usually privileged." *Pac. Packaging Concepts, Inc. v. Nutrisystem, Inc.*, No. CV 19-4755-ODW(Ex), 2020 U.S. Dist. LEXIS 222760, at *3 (C.D. Cal. Sep. 11, 2020).  A party who commissioned a trademark search report, however, may sometimes "be able to demonstrate sufficient involvement of its attorneys with the direction, creation and content of a given report to justify a conclusion that the report is privileged." *Id.* at *4.

The Court has reviewed the disputed documents *in camera*, and they are e-mails between attorneys and clients and not relevant to the "tough cookies" logo.  Accordingly, the Court finds that they are protected by attorney-client privilege.

### ii.    Communications with Jonathan Hyman

Next, the parties dispute whether communications between Defendant Hershey's legal team and Attorney Jonathan Hyman are privileged.  (Discovery Letter No. 2 at 1.)  The communications at issue occurred in December 2019 and January 2020.  Plaintiff asserts that Attorney Hyman's firm, Knobbe Martens, informed Plaintiff that it never represented Defendant Hershey but only represented Defendant One Brands, that the representation was for a limited scope, and that the representation concluded at the very latest by the close of the acquisition of Defendant One Brands by Defendant Hershey (late 2019).  (*Id.* at 3.)  Defendants, in turn, assert that Knobbe Martens was Defendant One Brands' longstanding outside IP counsel prior to the acquisition, and that Knobbe Martens "continued to advise One Brands (and Hershey, as ONE Brands' parent company" on various IP issues."  (*Id.* at 4.)

The Court requested information regarding Attorney Hyman's representation of Defendant One Brands.  (Dkt. No. 79.)  Attorney Hyman provided a declaration under penalty of perjury stating that he and his firm began representing Defendant One Brands in October 2018, and that the representation "ended on or about May 2020."  (Dkt. No. 80-1 ("Hyman Decl.") ¶¶ 2-3.)  Based on Attorney Hyman's declaration, it appears he was still representing Defendant One Brands at the time of the communications, and thus the communications would be protected by

4

1   attorney-client privilege.

2        Plaintiff contends that representation by Knobbe Martens ended at the acquisition, pointing

3   to deposition testimony by Defendant One Brands' former COO and president, David Ziegert.

4   (Dkt. No. 80 at 1.)  In the deposition testimony, Mr. Ziegert states that Knobbe Martens was no

5   longer representing Defendant One Brands on intellectual property issues, but does not state *when*

6   this representation ended.  (Dkt. No. 80-2 at 235:24-236:1.)  This does not demonstrate that the

7   representation had ended at the time of the disputed communications.  Accordingly, the Court

8   finds that the communications were properly designated.

9        **iii.    Communications between Kara Zioba, Erin Costa, and Janelle Knaus**

10        Finally, Plaintiff seeks communications between Ms. Zioba and non-attorneys Erin Costa

11  and Ms. Knaus.  (Discovery Letter No. 2 at 3.)  Plaintiff asserts that there is no indication in the

12  privilege log that the communications were accompanied by or contained advice from an attorney.

13  (*Id.*)  The e-mails, however, appear to include attachments from Carrie Clark, which are described

14  as "Notes reflecting confidential attorney-client communications re: product marketing."

15  (Discovery Letter No. 2, Exh. 1 ("Privilege Log") at 5.)  Notably, Plaintiff does not challenge the

16  attorney-client privilege designation for these attachments.  Further, as previously discussed, Ms.

17  Zioba is a paralegal working with Defendant Hershey's in-house counsel, and worked under the

18  direction of attorneys.  Thus, such communications are protected by attorney-client privilege.

19        Accordingly, the Court DENIES Plaintiff's request to require the production of these three

20  categories of documents.

21        **C.    Discovery Letter No. 3: Deposition of David Ziegert**

22        The parties' third letter concerns the deposition of Mr. Ziegert.  (Discovery Letter No. 3,

23  Dkt. No. 75.)  During Mr. Ziegert's deposition, Defendants objected to questions regarding who

24  made the decision to continue to use the "Tough Cookies Only" flavor line.  (*Id.* at 2-4.)  The

25  parties dispute whether attorney-client privilege applies to this line of questioning.

26        "It is well-recognized that the attorney-client privilege 'exists to protect not only the giving

27  of professional advice to those who can act on it but also the giving of information to the lawyer to

28  enable him to give sound and informed advice.'"  *Calendar Research LLC v. Stubhub, Inc.*, No.

United States District Court
Northern District of California

1    CV 17-4062 SVW (SSx), 2019 U.S. Dist. LEXIS 237001, at *5 (C.D. Cal. July 25, 2019) (quoting

2    *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981)).  At the same time, "[t]he privilege only

3    protects disclosures of communications; it does not protect disclosures of the underlying facts by

4    those who communicated with the attorney."  *Upjohn*, 449 U.S. at 395.

5          Mr. Ziegert stated that he did not make the decision to continue using the flavor line, and

6    that he had sought the advice of counsel regarding what to do with the flavor line after he learned

7    of the instant lawsuit.  (Discovery Letter No. 3, Exh. 1 ("Ziegert Dep.") at 100:16-19, 102:9-16,

8    103:6-8.)  In response to a question as to whether he had spoken to anyone else about the lawsuit,

9    Mr. Ziegert reiterated that he had spoken to "Hershey legal."  (Ziegert Dep. at 100:21-24.)  Thus,

10   this does not appear to be a situation where the decision to use the flavor line was made outside of

11   attorney-client communications; rather, it appears the decision was made in the course of

12   privileged attorney-client communications.  Questions regarding who made the decision would

13   therefore require disclosures of the attorney-client communications itself, rather than an

14   underlying fact communicated to an attorney.  *See Murdoch v. Castro*, 609 F.3d 983, 995 (9th Cir.

15   2010) (explaining that attorney-client privilege "does not protect disclosure of the underlying

16   facts, so long as the underlying facts can be proven without resort to the privileged materials").

17   Accordingly, the Court DENIES Plaintiff's request that Mr. Ziegert be required to answer these

18   questions.

19        **D.    Discovery Letter No. 4: Deposition of Jannelle Knaus**

20         The parties' fourth letter concerns the deposition of Ms. Knaus, Defendant One Brands'

21   former director of creative services.  (Discovery Letter No. 4, Dkt. No. 64.)  During Ms. Knaus's

22   deposition, Defendants objected to: (1) a question regarding whether Ms. Knaus was instructed to

23   see if the "Tough Cookies Only" flavor line could be replaced, and (2) a question regarding Ms.

24   Knaus's communications with Ms. Zioba.

25         With respect to the flavor line, like Mr. Ziegert, Ms. Knaus testified that she did not

26   remember speaking to anyone about the flavor line after the lawsuit was filed except counsel.

27   (Discovery Letter No. 4, Exh. A ("Knaus Dep.") at 120:1-4.)  Ms. Knaus further stated that she did

28   not remember anyone speaking to her about anything related to the flavor line that was not

United States District Court
Northern District of California

6

1    privileged.  (*Id.* at 119:23-25.)  Thus, like Mr. Ziegert, the only instructions Ms. Knaus may have

2    received regarding the flavor line would have taken place during the course of privileged attorney-

3    client communications.  As such, the Court DENIES Plaintiff's request that Ms. Knaus be required

4    to answer this question.

5            As to Ms. Knaus's communications with Ms. Zioba, as discussed above, Defendants have

6    provided evidence that Ms. Zioba did not provide her own advice to Ms. Knaus.  Rather, Ms.

7    Zioba acted as a conduit, relaying information between Ms. Knaus and counsel.  Accordingly, this

8    information is privileged attorney-client communications, and the Court DENIES Plaintiff's

9    request that Ms. Knaus be required to answer this question.

10           **E.    Discovery Letter No. 5: Plaintiff's Interrogatory Set No. 1**

11           The parties' fifth letter concerns Plaintiff's Interrogatory Set One, Nos. 1-4.  (Discovery

12   Letter No. 5, Dkt. No. 65.)  Interrogatory No. 1 states: "As it relates to the TOUGH COOKIE

13   REGISTRATION DISCOVERY as defined above, please identify the person or persons at ONE

14   BRANDS (including his/her role at ONE BRANDS) who first became aware of the TOUGH

15   COOKIE registration in or around January 16, 2020."  "TOUGH COOKIE REGISTRATION

16   DISCOVERY" is defined as "the incident described by HERSHEY in its Answer #11 to

17   Plaintiff's First Set of Special Interrogatory Dated May 17, 2021, in which HERSHEY stated that,

18   'Hershey first became aware of the TOUGH COOKIE registration in or around January 16,

19   2020.'"  (Discovery Letter No. 5, Exh. 1 at 2.)  Interrogatory Nos. 2-4 concern how that individual

20   became aware of the "Tough Cookie" registration, the identification of any non-privileged

21   communications relating to that awareness, and actions taken in response to that awareness.

22   (Discovery Letter No. 5 at 4.)

23           As an initial matter, the parties dispute what these interrogatories mean.  Plaintiff asserts

24   that it is trying to discover who at Defendant One Brands first became aware of Plaintiff's

25   trademark application, when they learned that information, and any non-privileged

26   communications relating to that issue.  (Discovery Letter No. 5 at 2.)  Defendants, in turn, argue

27   that because Plaintiff defined "Tough Cookie Registration Discovery" as when Defendant *Hershey*

28   first learned of the trademark application, such information is within Defendant Hershey's control.

United States District Court
Northern District of California

1   (*Id.* at 3.)  Based on a plain reading of the interrogatories, the Court construes the interrogatories to

2   seek the first person who learned of Defendant Hershey's discovery of the trademark application.

3          Substantively, Defendant argues that the identity of the person at Defendant One Brands

4   who first became aware of the pending trademark application is privileged because it concerns

5   attorney-client privileged information.  (Discovery Letter No. 5 at 3.)  The Court thus required

6   Defendant to provide information regarding who revealed Plaintiff's trademark application to

7   Defendant One Brands for the Court's *in camera* review.  (Dkt. No. 79.)  Having reviewed

8   Defendant's response, the Court finds that such information is protected by attorney-client

9   privilege.  Accordingly, the Court DENIES Plaintiff's request for a further response to these

10  interrogatories.

11          **F.      Discovery Letter No. 6: Defendants' Request for Production Nos. 42 and 43**

12          The parties' sixth letter concerns Defendants' Request for Production ("RFP) Nos. 42 and

13  43, specifically whether Plaintiff should be required to produce investor agreements that

14  Defendants contend are necessary to assess Plaintiff's financial fitness.  (Discovery Letter No. 6 at

15  1, Dkt. No. 76.)  Defendants argue that Plaintiff placed its financial health at issue because

16  Plaintiff claimed that Defendants' alleged trademark infringement unjustly enriched Defendants

17  and caused irreparable injury to it.  (*Id.* at 2.)  As to the investor agreements, Defendants assert

18  that Plaintiff employed a practice of converting debt owed to vendors into equity in the company,

19  which goes to Plaintiff's financial health and motivation for filing the instant case.  (*Id.*)  Plaintiff,

20  in turn, points out that the investors' names and dollar amount of their investments are publicly

21  available, and that evaluating the health of Plaintiff's financials does not require the investor

22  agreements.  (*Id.* at 4.)

23          Relevance has been broadly construed to encompass any matter that bears on, or that

24  reasonably could lead to other matters that could bear on, any issue that is or may be in the case.

25  *See Hickman v. Taylor*, 329 U.S. 495, 501 (1947).  The Court, however, finds that Defendants

26  have failed to satisfy its burden of establishing why the investor agreements are relevant.  *See*

27  *Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 245 n.79 (N.D. Cal. 2015) (explaining that the

28  party seeking production has the burden of explaining "why the information sought is relevant").

United States District Court
Northern District of California

1      Here, Defendants argue that the investor agreements go to Plaintiff's financial health, but

2   fail to explain how it connects to the merits of the case or Plaintiff's damages.  (Discovery Letter

3   No. 6 at 2-3, 4.)  Even if Plaintiff did convert debt into equity, or had employees that were given

4   equity instead of a salary, this does not appear to affect the harm suffered by the alleged

5   infringement.

6      Alternatively, Defendants argue that the investor agreements go to Plaintiff's motive for

7   bringing the suit.  (Discovery Letter No. 6 at 3.)  Courts, however, have found that a plaintiff's

8   motivation in bringing a trademark infringement case "was all but irrelevant—what mattered

9   w[as] whether Defendants' products were confusingly similar . . . ."  *Innovation Ventures, LLC v.*

10  *N2G Distrib.*, 763 F.3d 524, 542 (6th Cir. 2014).  The cased relied on by Defendants (none of

11  which involve trademark infringement) are distinguishable; in *Hunt v. Progressive Casualty*

12  *Insurance Co.*, the court found that plaintiff's financial status was material because it provided

13  motivation for the plaintiff to fabricate a loss or file a fraudulent claim, thus justifying the

14  defendant's denial of the plaintiff's insurance claim.  *Hunt v. Progressive Cas. Ins. Co.*, No. 09-

15  CV-2052 W (WVG), 2011 U.S. Dist. LEXIS 166852, at *7, 12-13 (S.D. Cal. Feb. 22, 2011).  In *In*

16  *re Netflix Privacy Litigation*, the district court permitted discovery into the motivations of

17  objectors to a class action settlement, explaining that such discovery went to the objectors'

18  standing to appeal the settlement and the bases for their objections.  *In re Netflix Privacy Litig.*,

19  No. 5:11-CV-00379-EJD, 2013 U.S. Dist. LEXIS 168298, at *14-15 (N.D. Cal. Nov. 25, 2013).

20  Thus, in both cases, the motivation was directly tied to the merits of the case.  Here, in contrast,

21  Defendants fail to explain how Plaintiff's motive would affect the validity of the trademark

22  infringement claim.[2]

23      Accordingly, the Court DENIES Defendants' request for the investor agreements.

24  **G.      Discovery Letter No. 7: Defendants' Requests for Admissions**

25      The parties' final letter concerns Plaintiff's responses to Defendants' Request for

26

27  [2] It appears Defendants suggested to Plaintiff that one of Plaintiff's investors may have a personal
    agenda against Defendants, prompting the instant litigation.  (Discovery Letter No. 6 at 5.)  Even

28  if this was the case, Defendants do not dispute that the names of Plaintiff's investors are publicly
    available, or explain why this would affect the merits of the trademark infringement claim.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Admissions ("RFA") Nos. 1 and 3.  (Discovery Letter No. 7, Dkt. No. 77.)  RFA Nos. 1 and 3 ask

2  Plaintiff to admit or deny certain statements and arguments made to the USPTO in 2012.

3      The parties do not dispute that the statements were made by Plaintiff's former counsel,

4  Bruno Tarabichi.  (Discovery Letter No. 7 at 3.)  Plaintiff, however, argues that "arguments

5  proposed by former counsel on a previous application (not the 2018 TOUGH COOKIE) . . .

6  unsigned by Plaintiff should not be treated as admissions or subject to RFAs targeting the

7  Plaintiff."  (*Id.*)  As Defendants point out, however, "clients must be held accountable for the acts

8  and omissions of their attorneys."  *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S.

9  380, 396, 113 S. Ct. 1489, 1499 (1993); *see also Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962)

10  (explaining that under "our system of representative litigation . . . each party is deemed bound by

11  the acts of his lawyer-agent . . . .").  Thus, it is not clear why Plaintiff may disclaim statements

12  made by Attorney Tarabichi in the course of his representation of Plaintiff.

13      Plaintiff has offered to admit that "its former counsel made the argument referenced in this

14  RFA," while Defendants would require that Plaintiff also admit that counsel "made the statement

15  on Plaintiff's behalf."  (Discovery Letter No. 7 at 4, 5.)  Plaintiff shall admit that Attorney

16  Tarabichi made the statement on Plaintiff's behalf.

17      This order disposes of Docket Nos. 64-66, 74-77, and 81.

18      IT IS SO ORDERED.

19  Dated: June 17, 2022

20  _____
    KANDIS A. WESTMORE

21  United States Magistrate Judge

22

23

24

25

26

27

28

10