UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE COOKIE DEPARTMENT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE HERSHEY COMPANY, et al.,<br><br>Defendants. | Case No. 20-cv-09324-KAW<br><br>**PRETRIAL CONFERENCE TENTATIVE RULINGS** |

## I.  MOTION TO STRIKE

Defendants move to strike Plaintiff's demand for a jury trial on the ground that Plaintiff's remaining damages theories sound in equity. (Defs.' Mot. to Strike, Dkt. No. 115.) The Court is inclined to **DENY** the motion because Plaintiff's claim for compensatory damages for corrective advertising is a legal remedy that warrants a jury trial.[1] *See Adray v. Adry-Mart*, 76 F.3d 984, 988 (9th Cir. 1995) ("An award of the cost of corrective advertising, like compensatory damage awards in general, is intended to make the plaintiff whole. It does so by allowing the plaintiff to recover the cost of advertising undertaken to restore the value plaintiff's trademark has lost due to defendant's infringement."). An award for damages is distinct from an injunction requiring a defendant to engage in a corrective advertising campaign, as is the case in most of the cases cited by Defendants.

The parties should be prepared to discuss if Plaintiff sufficiently disclosed its damages for a corrective advertising campaign, and how Plaintiff intends to calculate these damages.

To the extent Defendants seek an opportunity to brief a motion to bifurcate, the Court

---

[1] It is unclear whether Plaintiff is seeking compensatory damages based on damages to the goodwill of the mark.

1  would deny any such motion because it is not economical or efficient to bifurcate the trial into two
2  phases given the overlapping issues as to liability.

## II.   *DAUBERT* MOTIONS

In determining whether expert testimony is admissible under Federal Rule of Evidence 702, the district court is charged with performing "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993). This inquiry is "a flexible one," and "[i]ts overarching subject is the scientific validity -- and thus the evidentiary relevance and reliability -- of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 594-95.

| *Daubert* Motion to Exclude: | Ruling | Reason/Explanation |
|---|---|---|
| Rhonda Harper | Granted in Part; Denied in Part | In general, Ms. Harper's opinion adequately connects her experience to her conclusions as to the *Sleekcraft* factors. *See Marketquest Grp., Inc. v. BIC Corp.*, No. 11-CV-618-BAS (JLB), 2018 WL 1756116, at *2 (S.D. Cal. Apr. 12, 2018). <br><br> The Court will exclude Ms. Harper's opinions as to intellectual property diligence during Defendant Hershey's acquisition of Defendant ONE brands because Ms. Harper does not demonstrate any expertise in acquisitions and mergers, and her opinion does not connect her experience to this process. Rather, her opinions are generally a recitation of the evidence at issue, such as deposition testimony. Additionally, as discussed below, due diligence does not appear to be relevant to the case. <br><br> The Court will also exclude Ms. Harper's opinions as to the legal conclusion of whether there is likelihood of confusion. |
| Amanda Schlumpf | Denied | Ms. Schlumpf's opinion adequately explains how her experience with digital marketing encompasses experience with SEO. Ms. Schlumpf further adequately connects her |

| | | opinions with her experience.  Defendants' challenges to Ms. Schlumpf's methodology are ultimately arguments as to the weight of her opinions. |
|---|---|---|

## III. MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on the cancellation of Plaintiff's trademark registration for "TOUGH COOKIE," on the grounds that the registration is invalid due to fraud. (Defs.' Mot. for Summ. J., Dkt. No. 172.)  The Court intends to **DENY** the motion because Plaintiff has provided adequate evidence to create a genuine dispute of material fact as to whether Plaintiff's product list was made in good faith (or was a mistake as to vegan cookies).  (*See* Resnikoff Decl. ¶¶ 11-14.)

## IV. MOTION TO QUASH

The Court is inclined to deny the motion to quash, but modify the subpoena to allow Ms. Clements to testify virtually. She appears to have relevant testimony that is not duplicative of other witnesses, and this modification would remove the burden associated with travel.

## V. MOTIONS IN LIMINE

Relevant evidence is any evidence that has any tendency to make a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.  Fed. R. Evid. 401.  The Court has discretion to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issue, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

| <u>MIL</u> | <u>Motion</u> | <u>Ruling</u> | <u>Reason/Explanation</u> |
|---|---|---|---|
| P₁ | **Exclude evidence of legal right to use Tough Cookies Only phrase** | **GRANT IN PART; DENY IN PART** | Defendants may not assert reliance on legal advice that they did not disclose because of the attorney-client privilege.  Defendants may rely on other non-privileged bases so long as they were disclosed. |
| P₂ | **Preclude Defendants from disclaiming** | **DENY** | Plaintiff fails to demonstrate that CAVU Ventures is an agent or functional |

3

| | | | |
|---|---|---|---|
| | **actions of CAVU Ventures** | | employee of Defendants. |
| **P3** | **Preclude references to Plaintiff's motive** | **DENY** | Evidence of Plaintiff's motive may go to the issue of fraud in obtaining the trademark registration. |
| **P4** | **Exclude evidence from Virtual Diligence Room ("VDR")** | **DENY** | There is no showing that production of the VDR was needed if the responsive documents within the VDR were produced.  There is no showing the VDR was destroyed when Defendants had notice it was relevant to the instant litigation. |
| **P5** | **Exclude corrected financial document and expert opinions based thereon** | **DENY** | Plaintiff does not identify any prejudice. |
| **P6** | **Exclude evidence inconsistent with sworn discovery responses** | **DENY** | Plaintiff does not identify authority supporting exclusion of testimony that is inconsistent with interrogatory responses. Can be used for impeachment. |
| **P7** | **Exclude expert testimony as to legal conclusions** | **GRANT (qualified)** | Experts may not opine as to the ultimate legal conclusion of likelihood of confusion, nor should experts instruct the jury on applicable law.  With the exception of Mr. Schoettelkotte, the Court is unable to rule on the specific statements challenged by Plaintiff because the expert reports were not provided in Plaintiff's motions in limine, nor was a docket number citation provided to otherwise locate them. |
| **D1** | **Exclude evidence of insurance** | **GRANT** | Plaintiff asserts insurance coverage is relevant to showing due diligence, but due diligence is not relevant because there was no registered trademark at the time due diligence would have been conducted. |
| **D2** | **Exclude evidence of Defendants' past enforcement actions** | **DENY (qualified)** | Evidence of past enforcement actions may go to Defendants' knowledge of the standards and norms of trademark law. |

4

| | | | |
|---|---|---|---|
| | | | The Court, however, does not intend to allow any evidence of other cases between Plaintiff and Defendants, nor does the Court believe it would be a good use of time to introduce Defendants' previous enforcement actions. |
| D3 | **Exclude evidence of Plaintiff's efforts to amend the description of goods** | **GRANT** | Evidence of post-hoc efforts to amend the description of goods are not relevant to the case. The only relevance offered by Plaintiff is that Defendants did a similar thing, a collateral issue that has limited relevance and is likely to confuse the jury. |
| D4 | **Exclude evidence of Defendants' alleged failure to produce documents** | **GRANT** | Plaintiff does not oppose excluding evidence of discovery disputes. Plaintiff's only example of "missing" documents is the VDR, which the Court addressed in Plaintiff's MIL No. 4. |
| D5A | **Exclude evidence of Defendants' overall financials** | **GRANT** | Evidence of Defendant Hershey's financial statements or specific worth is not relevant. This does not preclude Plaintiff from making general references to Defendant Hershey being a large company with resources. |
| D5B | **Exclude evidence of Plaintiff's life stories** | **DENY** | Evidence goes to Plaintiff's defense against Defendant Hershey's affirmative defense of fraud in obtaining the trademark application. |
| D6 | **Exclude evidence of abandoned damages theories** | **GRANT IN PART, DENY IN PART** | It is unclear Plaintiff is seeking statutory damages or whether disgorged profits may be trebled. Corrective advertising may be calculated as a percentage of the advertising amount spent infringing on a plaintiff's mark. |
| D7 | **Exclude evidence of due diligence** | **GRANT** | Due diligence is not relevant in this case because there was no registered trademark at the time due diligence would have been conducted. |
| D8 | **Exclude evidence of Plaintiff's licensing agreements and** | **DENY** | The licensing agreements and negotiations go to strength of the mark, and arguments about their validity go to |

| | | | |
|---|---|---|---|
| | **negotiations** | | their strength rather than their relevance. It appears evidence of preliminary communications was disclosed prior to the fact discovery cutoff, and the failure to disclose the agreements until after the fact discovery cutoff is justified by the fact that they did not exist until July 2022. |
| **D9** | **Exclude evidence of Defendants' assertion of privilege** | **GRANT** | Evidence that Defendants asserted privilege is not admissible. |
| **D10** | **Exclude evidence of advice of counsel contained in the declaration of Attorney Indrajana** | **GRANT IN PART, DENY IN PART** | The advocate-witness rule prohibits Attorney Indrajana from appearing as both a witness and attorney in this case, but does not prohibit Mr. Resnikoff from testifying about the advice he was given by Attorney Indrajana. |

## VI.  EVIDENTIARY ISSUES

### A.  Plaintiff's Objections

With respect to trial exhibits, Plaintiff objects to: (1) any exhibits that would be precluded as a result of the pending motions in limine, (2) exhibits that were not previously produced in discovery, and (3) exhibits related to its witness objections. (Pl.'s Obj. at 1, Dkt. No. 194.) Plaintiff does not identify any of these exhibits, so the objections are overruled without prejudice.

As to witnesses, Plaintiff objects to Defendants' fourteen proposed witnesses who own companies that use the term "tough cookie." (Pl.'s Obj.'s at 1.) While the Court agrees that the use of "Tough Cookie" or similar marks may be relevant to the strength of the mark, the Court does not intend to allow the introduction of **fourteen** witnesses to testify about their use of a similar mark. *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1088 (9th Cir. 2005) ("Use of similar marks by third-party companies in the relevant industry weakens the mark at issue."). Defendants shall be prepared to explain why witness testimony is necessary, as opposed to less time-consuming methods. *See also id.* at 1087-88 (noting that the district court permitted the introduction of "**limited** evidence of existing third-party marks in the relevant field") (emphasis added).

B.   **Defendants' Objections**[2]

| Witness/Evidence | Ruling | Reason/Explanation |
|---|---|---|
| **Elannah Resnikoff** | **SUSTAIN** | Ms. Resnikoff was not disclosed as a witness. To the extent Plaintiff intends to call Ms. Resnikoff for "impeachment purposes," it is unclear what evidence she could impeach. |
| **Renae Scott** | **SUSTAIN** | Ms. Scott was not disclosed as a witness. To the extent Plaintiff intends to call Ms. Scott for "impeachment purposes," it is unclear what evidence she could impeach. |
| **Bruno Tarabichi** | **SUSTAIN** | Mr. Tarabichi was not disclosed as a witness. It is unclear what relevant testimony could be provided by Mr. Tarabichi as he was not the attorney on the relevant trademark application. |
| **Amanda Schlumpf** | **OVERRULE** | Ms. Schlumpf may testify as to matters in her expert report. |
| **Exhibit 1 (Tough Cookie Trademark)** | **OVERRULE** | There is a factual dispute as to whether the Tough Cookie registration is valid. |
| **Exhibits 2-6 (Plaintiff's Other Trademark Registrations)** | **SUSTAIN** | Plaintiff failed to produce during discovery, and the existence of other valid trademarks is irrelevant. |
| **Exhibits 17, 187-94 (Defendants' Interrogatory Responses, Videos of Deposition Testimony)** | **SUSTAIN** | Sustained to the extent the exhibits were not disclosed as part of Plaintiff's discovery excerpts. |
| **Exhibits 42, 96, 97, 98 (Privilege Log)** | **SUSTAIN** | Irrelevant and prejudicial under Rule 403. (*See* Defs.' MIL 9.) |
| **Exhibit 76 (Article re Hershey's Litigation History)** | **SUSTAIN** | Irrelevant and inadmissible hearsay. (*See* Defs.' MIL 2.) |
| **Exhibit 90 (E-Mail Exchange Between** | **SUSTAIN** | Irrelevant. |

---

[2] Plaintiff did not file responses to Defendants' evidentiary objections.

7

| | | |
|---|---|---|
| **Counsel)** | | |
| **Exhibits 93-95, 99, 104 (Expert Reports)** | SUSTAIN | "[A]n expert's report is not admissible by the proponent of the evidence, but the witness may testify about the basis for his or her opinions, and on cross-examination any of the material upon which the opinions were based may be admitted for impeachment purposes." *Log Cabin Republicans v. United States*, No. CV 04-08425-VAP (Ex), 2010 U.S. Dist. LEXIS 148637, at *4 (C.D. Cal. July 1, 2010). Further, "[g]enerally, expert reports are inadmissible hearsay," and Plaintiffs identify no hearsay exception. *Salgado v. Iqvia, Inc.*, 459 F. Supp. 3d 1318, 1327 (S.D. Cal. 2020). |
| **Exhibit 111 (Plaintiff's Request to Amend TOUGH COOKIE Trademark Registration)** | SUSTAIN | Irrelevant. (*See* Defs.' MIL 3.) |
| **Exhibit 112 (December 2020 E-mails re Counter SEO Campaign)** | SUSTAIN | E-mails were not produced during discovery, even though it went to Plaintiff's damages. (Fed. R. Civ. P. 37(c)(1).) |
| **Exhibit 114 (April 27, 2022 E-mail re Potential Licensing)** | OVERRULE | E-mails were produced during discovery. (*See* Defendants' MIL 6.) |
| **Exhibit 124 (E-mails re Virtual Data Room)** | SUSTAIN | Irrelevant. (*See* Pl.'s MIL 4; Defs.' MIL 9.) |
| **Exhibits 135, 136, 139, 140 (Documents re "One Tough Cookie" Business and Trademark)** | OVERRULE | While not produced in discovery, it appears Gail Dosik's former trademark was not at issue until the motion for summary judgment. It is unclear what harm Defendants will suffer. |
| **Exhibits 137, 138 (Lawsuits filed by One Tough Cookie)** | SUSTAIN | Lawsuits filed by Ms. Dosik (who is not a party to this case) are irrelevant. |
| **Exhibits 141, 157, 171 (Current Screenshots of Plaintiff's Website, Sale Sheet and Facebook)** | SUSTAIN | Unopposed and irrelevant. |
| **Exhibits 147, 149 (July** | SUSTAIN | Unopposed. |

8

| | | |
|---|---|---|
| 2022 E-mails re Potential Licensing) | | |
| Exhibits 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170 (Plaintiff's Prior Facebook Posts) | **SUSTAIN** | Unopposed and irrelevant. |
| Exhibits 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183 (September 2022 Screenshots of ONE Brands's Product Pages from ONE Brands website, Amazon, Target, and Walmart, etc. ) | **SUSTAIN** | Unopposed and irrelevant. |
| Exhibits 184, 185, 186 (Video Reviews of Plaintiff's Product) | **SUSTAIN** | Unopposed and irrelevant. |

C. **Discovery Excerpts**

Defendants also filed objections to Plaintiff's discovery excerpts. (Dkt. No. 197.) Plaintiff did not file a response. Accordingly, the Court SUSTAINS the objections as unopposed.

## VII.   VOIR DIRE

The Court currently issues an electronic questionnaire, which includes standard juror questions (Attachment A) and up to ten additional case specific questions. The additional questions cannot have subparts or be formatted with an "if yes, . . . ." section. Accordingly, the parties should review the standard juror questions and jointly propose ten case specific questions by **October 27, 2022**.

With respect to the parties' jointly submitted questions, the Court does not intend to re-ask questions that potential jurors would already have asked in the questionnaire. This does not preclude following up on particular answers. To ensure that voir dire does not take an excessive amount of time, the parties should meet and confer as to which questions they believe most important to ask.

# VIII. JURY INSTRUCTIONS

The parties did not file a **joint** set of jury instructions. Accordingly, the Court ORDERS the parties to file a **single** set of jury instructions by **November 2, 2022**, which shall be organized in the order the parties propose they be given. The parties shall meet and confer to resolve their objections to the extent practicable; there is no reason why the parties should be objecting to **every single** proposed instruction. Each jury instruction shall be typed in full on a separate page and provided in the format below:

**INSTRUCTION NO. #:**

**Title of Jury Instruction**

Text of Jury Instruction


Authority/Source: If modifications are being made to the model rules, the party shall explain each proposed modification other than case-identifying information (*i.e.*, the name of the parties, the mark at issue, etc.).

Submitting Party:

Objections (if any): The objecting party must explain with specific detail why the proposed jury instruction is inadequate.


If the parties have competing instructions, the parties shall so indicate as currently, the Court is unable to determine which instructions the parties believe are duplicative.

To assist with the parties' meet and confer, the Court provides the following guidance on the parties' objections.

### A. Plaintiff's Objections

#### i. Instruction Nos. 1 (Preponderance of the Evidence) and 2 (Clear and Convincing Evidence)

Plaintiff objects to these instructions because Plaintiff asserts that it will "cause confusion about what burden is applicable for which claims and defenses." (Pl.'s Obj. re Jury Instr. at 1.) The Court disagrees. These instructions simply explain the different standards of proof, whereas

the instructions on the specific claims will specify which standard applies.

### ii. Instruction Nos. 3 (Definition and Function of a Trademark) and 4 (How a Trademark is Obtained)

Plaintiff objects to Defendants' modification of "mark" to "trademark." (Pl.'s Obj. re Jury Instr. at 1.) Defendants agree to use "mark," as well as in the other instructions to which Plaintiffs object to this modification. (Defs.' Resp. to Pl.'s Obj. re Jury Instr. at 2.) This highlights the importance of meeting and conferring **before** presenting unnecessary objections and disputes to the Court. The parties should not be wasting the Court's limited judicial resources by presenting disputes that they could have resolved on their own.

### iii. Instruction No. 5 (Likelihood of Confusion)

Plaintiff objects to Defendants specifying the trademark at issue and personality tag in the jury instruction (*i.e.*, replacing "plaintiff's mark" with "TOUGH COOKIE trademark" and replacing "defendant's use of the mark" with "ONE Brand and Hershey's use of the Tough Cookies Only personality tag"). (Pl.'s Obj. re Jury Instr. at 1-2.) The Court is unclear why this would cause jurors to inappropriately focus on the tagline. Likewise Plaintiff objects to referring to both ONE Brands and Hershey because this may result in a jury believing Plaintiff has to prove that both ONE Brands and Hershey infringed, rather than either. This appears to be a stretch.

As to Plaintiff's objection as to Defendants' use of "prove" rather than "demonstrate," Defendants agree to use "demonstrate." (Defs.' Resp. to Pl.'s Obj. re Jury Instr. at 2.)

### iv. Instruction No. 6 (Trademark Liability)

Plaintiff objects to Defendants' modification of the model jury instruction to exclude as a relevant fact of liability: "infringing plaintiff's trade name, by using similar corporate, business or professional names in a manner likely to cause confusion about the source of products in the minds of consumers." (Pl.'s Obj. re Jury Instr. at 2.) The instant case, however, does not involve Defendants' use of similar corporate, business, or professional names. The alleged infringement is from Defendants' tagline.

### v. Instruction Nos. 8, 9, 10 (Infringement re Unregistered Trademarks)

The parties shall meet and confer on this instruction in light of the Court's denial of

11

1    Defendants' summary judgment motion.

####        vi.    Instruction No. 11 (Presumed Validity and Ownership – Registered Trademark)

Plaintiff contends that if a jury finds that the trademark was fraudulently obtained, the result is that the trademark then becomes contestable and that Defendants must show the trademark was invalid. (Pl.'s Obj. re Jury Instr. at 4.) As Defendants point out, this jury instruction closely tracks the Ninth Circuit's model jury instruction. (Defs.' Resp. to Pl.'s Obj. re Jury Instr. at 5.) The parties should meet and confer as to whether separate instructions are warranted regarding how to prove a trademark is invalid if the registration is no longer conclusive (*i.e.*, Pl.'s Proposed Instruction Nos. 9, 13).

####        vii.    Instruction No. 12 (Likelihood of Confusion – Factors)

Plaintiff objects that Defendants list "irrelevant factors," but does not identify which factors are irrelevant. (Pl.'s Obj. re Jury Instr. at 5.) The factors listed are the *Sleekcraft* factors. The Court is unclear why any of these factors are irrelevant, particularly when Plaintiff proposes the same exact factors in its own jury instructions. (*See* Pl.'s Proposed Instruction No. 14.)

####        viii.    Instruction No. 13 (Abandonment)

Plaintiff objects that the instruction is misleading because the model instruction "do[es] not provide the nuance and clarity provided in the comments." (Pl.'s Obj. re Jury Instr. at 5.) The parties should meet and confer on this issue, but the Court is not inclined to find that the model jury instruction is itself "misleading."

####        ix.    Instruction No. 14 (Fraud)

Plaintiff objects that the instruction misstates the elements of fraud. (Pl.'s Obj. re Jury Instr. at 5.) The jury instruction appears to closely track Ninth Circuit case law regarding the elements of fraud, but the parties should meet and confer as to whether any further expansion is required, *e.g.*, what constitutes a material statement.

####        x.    Instruction No. 15 (Disgorgement of Profits)

Plaintiff objects that this instruction fails to cite to model instruction 15.29, which concerns statutory damages. (Pl.'s Obj. re Jury Instr. at 6.) Assuming that Plaintiff may seek statutory

1  damages, this does not explain why Instruction No. 15 (which concerns disgorgement of profits)
2  must also refer to statutory damages. Rather, it appears that a separate instruction on statutory
3  damages would be warranted.

### B. Defendants' Objections

#### i. Instruction No. 9 (Preliminary Instructions – Trademark)

First, Defendants object to this instruction regarding the effects of a valid trademark. (Defs.' Obj. re Jury Instr. at 4.) Defendants contend that they intend to rebut the presumption of validity and ownership, such that the language regarding the ability to overcome the presumption should be maintained. While Plaintiff states that overcoming the presumption is discussed in Instruction No. 13, Plaintiff does not explain why the removal of this language in the instant instruction is necessary. (Pl.'s Resp. to Defs.' Obj. re Jury Instr. at 1.)

Second, Defendants challenge the language explaining the preponderance of the evidence standard. (Defs.' Obj. re Jury Instr. at 4.) As the Court intends to issue separate jury instructions on the different standards of proof, this language is unnecessary.

Finally, the parties should meet and confer as to whether separate instructions for each subpart may be easier for a jury to review.

#### ii. Instruction No. 10 (Trademark Definition)

Defendants object to the inclusion of the effect of trademark registration. (Defs.' Obj. re Jury Instr. at 5.) The parties should meet and confer as to whether this inclusion is necessary given other instructions concerning that matter (*e.g.*, Pl.'s Proposed Instruction No. 13; Defs.' Proposed Instruction No. 11.)

#### iii. Instruction Nos. 11 (Trademark Liability) and 16 (False Designation of Origin)

Defendants object to these instructions to the extent they concern false designation of origin. Defendants argue that Plaintiff did not assert a false designation of origin claim, but Plaintiff's complaint states that Defendants' use of the Tough Cookies Only personality tag creates confusion "as to the **origin**, sponsorship, or approval of the parties' goods and/or services." (Compl. ¶ 40 (emphasis added); *see also* Compl. ¶¶ 44, 67.) Defendants do not explain why a

*separate* cause of action for false designation is required, particularly when Plaintiff alleged that Defendants' use of the mark "creat[es] the false and misleading impression that the Infringing Product is associated or connected with the TOUGH COOKIE® mark and TCD." (Compl. ¶ 51.) "Courts have recognized that a false designation and false association claim are essentially synonymous." *Zamfir v. Casperlabs, LLC*, 528 F. Supp. 3d 1136, 1143 n.5 (S.D. Cal. 2021).

### iv. Instruction No. 14 (Likelihood of Confusion)

Defendants object to Plaintiff's proposed addition to the jury instruction's description of "Consumer's Degree of Care," to include information about less sophisticated buyers and cheaper goods. (Defs.' Obj. re Jury Instr. at 5.) The Court finds that this addition to the model jury instruction seems inappropriate, particularly when the model jury instruction already discusses sophistication and cost of the goods.

### v. Instruction No. 15 (Trademark Infringement – Strength of Trademark)

First, Defendants object to Plaintiff's language stating that the TOUGH COOKIE trademark is a federally registered trademark. (Defs.' Obj. re Jury Instr. at 5.) The parties should meet and confer as to this issue, given that the Court intends to deny Defendants' summary judgment motion.

Second, Defendants challenge the portion or the jury instruction that states: "TCD contends that Hershey's and ONE BRANDS' use of the phrase 'TOUGH COOKIES ONLY' on ONE Chocolate Chip Cookie Dough Flavored Protein Bar's packaging and related marketing and advertising infringes TCD's trademark because it is likely to cause confusion." (Defs.' Obj. re Jury Instr. at 6.) Defendants contend that this is inappropriate because Plaintiff has no survey evidence that Defendants' packaging, marketing, or advertising caused confusion. (*Id.*) This, however, seems a straightforward description of Plaintiff's claim; it does not suggest Plaintiff has (or can) proven its claim.

Finally, Defendants argue that Plaintiff removed language from the model jury instruction about the relative weakness of suggestive marks. It is unclear why this removal is appropriate, and Plaintiff does not explain.

//

      **vi.**    **Instruction No. 18 (Willfulness)**

Defendants object to an instruction on willfulness on the ground that there is no factual support for willfulness. (Defs.' Obj. re Jury Instr. at 2.) This appears to be an issue for trial; the parties can revisit this issue towards the close of trial to determine if this issue is properly before the jury.

      **vii.**    **Instruction Nos. 19 (Notice), 20 (Actual Damages), 21 (Diminution in Value)**

Defendants object to these instructions on the same grounds as Motion in Limine No. 6. The parties should meet and confer on this, given the Court's ruling.

## IX.    VERDICT FORM

Having reviewed the parties' proposed verdict forms, the Court is inclined to use a variation of the following questions from the parties' proposals (in proposed order):

1. (Defs.' Proposed Question No. 1) Has TCD proved by a preponderance of the evidence that TOUGH COOKIE is a valid, protectable trademark that is used in commerce, indicates the source of TCD's goods, and distinguishes those goods from the goods of others?

2. (Defs.' Proposed Question No. 7) Has ONE Brands and Hershey proved by clear and convincing evidence that TCD abandoned the TOUGH COOKIE trademark?

3. (Defs.' Proposed Question No. 8) Has ONE Brands and Hershey proven by clear and convincing evidence that TCD committed fraud in obtaining the TOUGH COOKIE registration by knowingly making a materially false representation to the United States Patent and Trademark Office ("USPTO") at the time of its application with the intent of deceiving the USPTO?

4. (Pl.'s Proposed Question No. 1) Did TCD prove by a preponderance of the evidence that ONE Brands' and Hershey's use of "TOUGH COOKIES ONLY" to sell ONE Chocolate Chip Cookie Dough Flavored Protein Bars infringed TCD's TOUGH COOKIE trademark?

5. (Pl.'s Proposed Question No. 2) Did TCD prove by a preponderance of the evidence that ONE Brands' and Hershey's use of "TOUGH COOKIES ONLY" to sell ONE

15

1     Chocolate Chip Cookie Dough Flavored Protein Bars was unlawful, unfair, or
2     fraudulent under California law?
3  6. (Pl.'s Proposed Damages Question) If you answered yes to Nos. 4 or 5, what is the
4     amount of TCD's damages, if any?
5  7. (Def.'s Proposed Question No. 10) If you answered yes to Nos. 4 or 5, specify the
6     amount of ONE Brands' and Hershey's profits TCD has proven by preponderance of
7     the evidence were from the sale of ONE Brands' Chocolate Chip Cookie Dough
8     Protein Bar and attributable to the use of the infringing phrase.

This is not the final proposed language; the Court will require the parties to meet and confer and jointly prepare a final verdict form for the Court's review by **November 3, 2022**.

Additionally, the Court notes that Plaintiff's questions regarding punitive damages are improper. The Ninth Circuit has found that "punitive damages are not available under the Lanham Act." *Duncan v. Stuetzle*, 76 F.3d 1480, 1490 (9th Cir. 1996). Likewise, the California Supreme Court has made clear that California's Unfair Competition Law does not permit recovery of punitive damages. *Clark v. Superior Court*, 50 Cal. 4th 605, 610 (2010). In any case, Plaintiff did not request punitive damages in its complaint.

## X.  ADMINISTRATIVE MATTERS

The Court intends to impose time limits on each party at trial. Each party is therefore DIRECTED to submit (1) the projected duration of the direct examination of each of its witnesses listed in the Joint Pretrial Conference, Dkt. No. 151; (2) the anticipated duration of the cross-examination of each of the other party's disclosed witnesses; and (3) the total number of hours projected (i.e., the sum of categories (1) and (2)). These estimates should be realistic, not padded. The parties should be prepared to discuss these estimates during the pretrial conference. The Court may shorten the allotted time as it deems appropriate, particularly if the parties continue to focus on collateral issues.

The parties should be prepared to discuss options for the public to stream or listen in on the trial, such as by Zoom webinar or other means. The parties should also be prepared to discuss their technology requirements. The parties are generally required to provide all necessary

courtroom technology, such as cameras, a projector screen, and a projector. The parties should also be prepared to come to the Court before the trial to test technology.

The parties should be prepared to discuss what procedures are necessary for handling sealed information. The Court notes, however, that many of the proposed redactions are overbroad and unnecessary, and that the Court intends to deny a substantial portion of the pending motions to file under seal.

### XI. COVID PRECAUTIONS

In light of the ongoing pandemic, the undersigned is committed to keeping the parties, counsel, witnesses, and court staff as safe as possible. The parties should be prepared to discuss the ability to pivot to a hybrid Zoom trial should there be a positive COVID-19 case or exposure.

Currently, universal masking in the courthouse is no longer required, but the parties should be prepared to discuss other COVID-related issues, including the vaccination status of counsel, the parties, and witnesses, and what other precautions may be taken to keep everyone safe. The Court is inclined to require those who are not fully vaccinated and have received at least one booster to remain masked for the duration of the trial, but it is open to permitting those who show proof of full vaccination to forego masking unless either of the parties object. Notwithstanding, the Court may impose a mask mandate on all present without regard to vaccination status should the number of community cases rise or if there is a change in guidance from local public health agencies.

Finally, all persons entering the courthouse are required to review the Northern District's "COVID-19 Pre-screening Questionnaire," available online at *https://www.cand.uscourts.gov/wp-content/uploads/clerks-office/CAND-COVID-19-Pre-Screening-Questionnaire_8-2-2021.pdf*. Anyone experiencing any symptoms, including fever or cold-like symptoms, is not permitted to enter the courthouse. If this happens, the parties are directed to notify the courtroom deputy at kawcrd@cand.uscourts.gov.

IT IS SO ORDERED.

Dated: October 25, 2022

_____
KANDIS A. WESTMORE
United States Magistrate Judge